IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RANDALL ROBINSON,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 1:22-CV-02731-JMC <br> ) |
| **WELLS FARGO BANK, N.A.,** | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## DEFENDANT WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Wells Fargo Bank, N.A., ("Wells Fargo"), hereby submits this Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's First Amended Complaint.

## INTRODUCTION

Plaintiff Randall Robinson ("Robinson" or "Plaintiff") brings this employment discrimination lawsuit against his former employer. Robinson claims that Wells Fargo discriminated and retaliated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), when it failed to promote him on several occasions and eventually terminated his employment. For the following reasons, Defendant moves to have this Court dismiss Plaintiff's discrimination claims (Counts I and III) of Plaintiff Randall Robinson's Amended Complaint with prejudice in their entireties and dismiss the retaliatory failure to promote claims under Title VII in Count II of Plaintiff Randall Robinson's Amended Complaint with prejudice.

As an initial matter, Plaintiff's Title VII claims for discriminatory and retaliatory failure to promote in both Counts I and II should be dismissed because he did not file his charge of

discrimination within three hundred days of the alleged adverse actions, and therefore, he failed to properly exhaust his administrative remedies as to those claims.

Additionally, Count I of Plaintiff's Amended Complaint alleging race discrimination under Title VII should be dismissed for failure to state a claim because he does not allege any facts that suggest that either the promotion decisions, the decision to place him on unpaid leave, or the decision to terminate him was because of his race.

Similarly, Count III of Plaintiff's Amended Complaint alleging race discrimination under Section 1981 should be dismissed in its entirety because Plaintiff has not plausibly alleged that his race was the but-for cause of the alleged adverse actions.[1]

## STATEMENT OF FACTS[2]

Robinson is African American. (First Amended Complaint ("Am. Compl." Or "Amended Complaint"), ECF Docket No. 25, ¶ 12.) Wells Fargo employed Robinson as a Branch Manager at its Annapolis, Maryland branch location. (Am. Compl. ¶ 13.) On or around late January to February 2019, Plaintiff claims that he told his manager, Ray Schreiner, a Caucasian, that he believed a white employee under Plaintiff's supervision was engaging in unethical conduct relating to awards of paid time off to subordinate employees that an African American Branch Manager had been terminated for engaging in the exact same conduct, and that he was going to report the Caucasian employee to Human Resources anonymously. (Am. Compl. ¶¶ 24, 25.) Plaintiff further claims he did report the alleged misconduct to Human Resources and told Schreiner he had done so. (Id.)

---

[1]   Although Wells Fargo denies any wrongdoing or that Plaintiff is entitled to any relief, it does not move to dismiss Plaintiff's claim of retaliatory discharge under Title VII or Plaintiff's claim of retaliatory discharge or failure to promote under Section 1981.

[2]   These facts are taken from the Amended Complaint and, as they must be, are assumed true for purposes of this Partial Motion to Dismiss only.

FP 46915838.4

According to Plaintiff, Wells Fargo encouraged Plaintiff to apply for leadership positions, including a District Manager job. (See Am. Compl. ¶ 16.)

In February of 2019, Robinson applied to the position of North Central District Manager. (Am. Compl. ¶ 18.) Robinson was not selected for the vacancy; instead, the position was awarded to Robinson's manager, District Manager Ray Schreiner. (Am. Compl. ¶¶ 18, 19.) Plaintiff alleges that the position had been "earmarked" especially for Schreiner. (Am. Compl. ¶¶ 18,19.) Shortly after Schreiner was laterally transferred to the North Central DM position, Schreiner encouraged Plaintiff to apply for his vacated position of South Central DM. (Am. Compl. ¶ 19.) However, Plaintiff learned that Margaret Griffith, a Caucasian, was allegedly already pre-selected for that role, and Plaintiff did not apply. (Am. Compl. ¶ 20.) According to Plaintiff, Schreiner promised Plaintiff that Plaintiff would receive the Prince George's County District Manager position if Plaintiff did not apply to the South Central DM position. (Id.) Schreiner also "placed Plaintiff on multiple stretch assignments to groom him for the promised Prince George's County District Manager role." (Am. Compl. ¶¶ 31.) In addition, according to Plaintiff, the Regional President (Caucasian) asked Plaintiff to serve as the interim District Manager for Prince George's County. (Am. Compl. ¶ 30).

In March 2019, Plaintiff applied for the Prince George's DM position, and was interviewed and moved forward in the application process. (Am. Compl. ¶ 37.) On or around April 3, 2019, Plaintiff learned that he had not been selected for the Prince George's DM position. (Am. Compl. ¶ 38.) Plaintiff alleges the Prince George's DM position was filled by a Hispanic female. (Am. Compl. ¶ 58.) Plaintiff reiterates his belief that he was "eminently qualified for the job;" however, he makes no mention of the Hispanic selectee's own credentials or qualifications. (Am. Compl. ¶ 58.)

According to Plaintiff, he was initially told that the decision not to hire him "had something to do with [his] coaching or communication style." (Am. Compl. ¶ 39). However, Plaintiff speculates that Schreiner had informed the Regional President, who was also a member of the interview panel, that Plaintiff had made a report about the alleged misconduct of the Caucasian employee and the terminated African American Branch Manager. (Am. Compl. ¶ 27.)

Plaintiff asked for clarification why he was not awarded the position. (Am. Compl. ¶ 41.) On April 5, 2019, Plaintiff asserts he received a call from Senior Employee Relations ("ERC") Manager Ellen Marriott, a Caucasian, regarding his application to the Prince George's DM Position. (Am. Compl. ¶ 42.) Marriott explained that she handled the screening process for District Manager-level and above job positions. (Am. Compl. ¶ 42). She further explained that the screening process used for the Prince George's DM position selection was a new process that was very extensive. (Am. Compl. ¶ 42.) She stated that there were two levels of screening, and that her team looked at a variety of factors over many years of service, including leadership style, historical sales practice record, and team members who have been terminated or put on corrective action under Plaintiff's leadership, when making its decision regarding who to hire. (Am. Compl. ¶ 42.) By way of explanation for why Plaintiff was not hired, Marriott referenced an ERC case from late September/October 2018, in which a subordinate team member complained that Plaintiff was often absent from the branch without telling the team. (Am. Compl. ¶¶ 43, 44.) Plaintiff acknowledges that he was often away from the branch, as his job required him to travel while he was the acting District Manager, but he asserts that he did not know it was considered a flaw in his management style. (Am. Compl. ¶ 44.) According to Plaintiff, Marriott further indicated that Plaintiff had inappropriately counseled subordinates in public. (Am. Compl. ¶ 45.) Plaintiff claims he had not previously been alerted that there "were any flaws with his management style or that he needed improvement in any areas whatsoever." (Am. Compl. ¶ 45.) Plaintiff notes that

the ERC case cited by Wells Fargo as a factor in its decision to not select him for promotion occurred six months before he engaged in any protected conduct, and generally claims it is "bogus." (Am. Compl. ¶ 45). Plaintiff also claims that he was not given an opportunity to respond to Marriott's criticisms, and that she stated the selection decision for the promotion was final. (Am. Compl. ¶ 47.)

According to Plaintiff, about a week after the April 5, 2019 call, Plaintiff met with an unidentified Human Resources representative, and expressed that he believed he was being discriminated against based on race and protected conduct because he had not been promoted to DM. (Am. Compl. ¶¶ 59-60.) He further claims that "from April 5, 2019 until November 18, 2019, he continued to raise concerns of WF's discriminatory practices with Schreiner, Griffith, Tuttle and others, including that he was being discriminated against and not promoted based on his race and treated disparately." (Am. Compl. ¶ 61.) He further claims that he contacted a "third-party investigation company" regarding his complaints of alleged discrimination and retaliation. (Am. Compl. ¶ 62.)

On around November 18, 2019, Margaret Griffith called Plaintiff and notified him that he was being placed on administrative leave. (Am. Compl. ¶ 64.) Plaintiff claims the leave was unpaid. (See, e.g., Am. Compl. ¶¶ 95, 98, 122). Plaintiff subsequently learned on or about November 23, 2019, that he was under investigation because a subordinate employee complained that Plaintiff pushed him. (Am. Compl. ¶ 65, 66.) Plaintiff was further advised that he had violated Wells Fargo's anti-harassment policy. (Am. Compl. ¶ 68.) During the November 23, 2019 call with the investigator, Pete Luedemann, Plaintiff claims he again complained that he was being discriminated against because of his race and for engaging in protected activity. (Am. Compl. ¶ 65.)   According to Plaintiff, he was on administrative leave from November 18, 2019, until

December 30, 2019, when Griffith again called Plaintiff and advised him that he was being terminated for cause. (Am. Compl. ¶ 69)

Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission on May 18, 2020. (Am. Compl. ¶ 6; Exhibit 1.) The EEOC issued Plaintiff a Right to Sue Letter on June 7, 2022. (Am. Compl. Exhibit 2.) Plaintiff alleges with no explanation that his counsel received the Right to Sue Letter on July 26, 2022. (Am. Compl. ¶ 7.) Plaintiff filed the instant Complaint on October 24, 2022. (ECF Docket No. 1.) On February 2, 2023, Defendant filed a Motion to Dismiss. (ECF Docket No. 20.) On April 10, 2023, Plaintiff filed his First Amended Complaint. (ECF Docket No. 25.) This Partial Motion to Dismiss Plaintiff's First Amended Complaint now follows.

## ARGUMENT

### I. Legal Standard.

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well established. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 566 U.S. at 678. Dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679. "Thus, mere 'labels and conclusions' will not suffice. Id. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555.

**II.     Robinson's Title VII Failure to Promote Claims Were Not Timely Raised with the EEOC.**

In Maryland, an aggrieved employee must file his charge of discrimination with the EEOC within 300 days of the alleged discriminatory action.  Rivera v. Howard Cnty. Pub. Sch., No. BPG-19-3598, 2021 WL 2260379, at *2 (D. Md. June 3, 2021.)  Importantly, separate instances of an employer failing to promote an employee are considered "discrete acts" which are each individually subject to the 300-day limitation period.  Id. (rejecting the plaintiff's argument that multiple failure to hire events constituted a pattern of discrimination and dismissing as untimely all failure to hire claims that fell outside of the 300-day timeframe); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (defining "discrete acts" to include "termination, failure to promote, denial of transfer, or refusal to hire.")

Robinson filed his Charge of Discrimination with the EEOC on May 18, 2020.  (Am. Compl. ¶6; Exhibit 1.)  Consequently, the only timely reported claims are those that arose on or after July 23, 2019.  Plaintiff does not allege that he was not selected for any promotions on or after July 23, 2019.  In his Amended Complaint, Plaintiff states, "Plaintiff applied for three DM positions, the last of which was the Prince George's County DM position."  (Am. Compl. ¶84.)  He further alleges that he applied to the Prince George's County district manager ("DM") position on or around March 2019 and learned that he was not selected for that position on or around April 3, 2019.  (Am. Compl. ¶37; 38.)  Despite what Robinson describes as near constant internal complaints from April 2019, until November 18, 2019, regarding Wells Fargo's allegedly discriminatory decision to not select him for the DM Position in April 2019, Robinson waited over a year to file a complaint with the EEOC.  Thus, Robinson did not properly exhaust his administrative remedies regarding his non-selections for promotion under Title VII, and the Court

should dismiss Plaintiff's discriminatory failure to promote claims in Count I and retaliatory failure to promote claims in Count II as untimely.

**III.    Robinson Fails to State Claims for Discrimination Under Section 1981 and Title VII.**

While a plaintiff is not required to plead a *prima facie* case of discrimination under Title VII in order to survive a motion to dismiss, he must plausibly allege facts sufficient to satisfy the elements of his cause of action. Iwebo v. Sheppard Pratt Health Sys., No.: BPG-19-3008, 2020 WL 4748579, at *2 (D. Md. Aug. 14, 2020). For a discrimination claim, a plaintiff must plausibly allege facts that: "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; (3) [his] job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Id.

While the elements of a *prima facie* case of discrimination under Section 1981 are generally the same as under Title VII, see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n.7 (4th Cir. 2002), the Supreme Court recently held that in order for Section 1981 claims to survive a motion to dismiss, "a plaintiff must initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1017–19 (2020) (specifically rejecting use of Title VII's motivating factor causation standard in Section 1981 claims); Ali v. BC Architects Engineers, PLC, 832 F. App'x 167, 171 (4th Cir. 2020), as amended (Oct. 16, 2020); Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022) (applying Comcast to Section 1981 employment claims).

As discussed in more detail below, Plaintiff fails to allege facts that support an inference that Wells Fargo's decisions to terminate him and not to promote him were because of his race. Accordingly, his discrimination claims under both Title VII and Section 1981 should be dismissed.

*A. Robinson Fails to State Claims Under Title VII and Section 1981 for Discriminatory Termination.*

Under both Title VII and Section 1981, "in order to survive a motion to dismiss, a complaint for discriminatory termination under either statute must allege facts allowing for a reasonable inference that the defendant terminated the plaintiff's employment because of his race." Felder v. Maximus, Inc., No. JKB-16-3517, 2017 WL 915003, at *2 (D. Md. Mar. 7, 2017). At the pleading stage, absent direct evidence of discrimination, this is typically done by pleading facts that would plausibly allege a *prima facie* case of discriminatory discharge. Id.  A *prima facie* case of discriminatory termination requires the plaintiff to show "(1) that he is a member of a protected class, (2) that his employer took an adverse employment action against him, (3) that he was meeting legitimate employment expectations, and (4) that he was treated differently from similarly-situated persons outside of his protected class."  Id.

Other than generally asserting that "all the investigators and decision makers in Plaintiff's termination were Caucasian," Plaintiff has not alleged any facts that support an inference of race discrimination in connection with his placement on administrative leave and subsequent termination. (Am. Compl. ¶ 71; 77; 78.)  The mere fact that the decision makers were of a different race than Plaintiff does not create a plausible inference of race discrimination.  Bing v. Brivo Sys., LLC, 959 F.3d 605, 621 (4th Cir. 2020) (holding "the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff . . . does not alone support a *reasonable inference* that the decisionmakers were motivated by bias"); Coe v. CFRA, LLC, No. 2:16cv365, 2016 WL 7826809, at *5 (E.D. Va. Dec. 22, 2016) ("The fact that an African-American was discharged from employment by a white decision-maker does not, standing alone, state a claim under Title VII.")  Beyond his own belief that he was placed on leave and fired for being African American, Robinson does not allege any facts whatsoever to raise that belief beyond a speculative level.  See Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010), aff'd sub nom.

9

Coleman v. Ct. of Appeals of Maryland, 566 U.S. 30, 132 (2012).  He does not allege that he was replaced by someone outside of his protected class; he does not identify any non-African American employee who was not placed on leave pending a misconduct investigation or terminated under similar circumstances; and he does not otherwise allege any facts that even tend to suggest that he was treated differently than non-African American employees with respect to his placement on leave or resulting discharge.  Rather, Plaintiff's own allegations explain why Plaintiff was placed on leave and terminated:  the Company received an employee complaint that Plaintiff had engaged in possible misconduct, the Company placed him on leave pending the investigation of that conduct, and the Company eventually terminated him for violation of policy in connection with the investigated conduct.  (Am. Compl. ¶ 64–73.)

In short, the Amended Complaint is devoid of factual allegations that support Plaintiff's assertion that Wells Fargo placed him on unpaid leave and terminated him because of his race.[3]  Therefore, Plaintiff fails to state claims of discriminatory discharge.  Accordingly, his Title VII and Section 1981 wrongful termination claims in Counts I and IV should be dismissed.

   B. *Robinson Fails to State Claims for Discriminatory Failure to Promote Under Title VII and Section 1981.*

All of Robinson's discriminatory failure-to-promote allegations should be dismissed.  As discussed above, the Title VII failure-to-promote claims should be dismissed because Robinson failed to exhaust his administrative remedies.  Even if he had exhausted his administrative remedies, however, the Amended Complaint fails to state discriminatory failure-to-promote claims.  To state a claim of discrimination based on failure to promote, a plaintiff must plausibly

---

[3] By contrast, the Amended Complaint does contain factual detail explaining the non-discriminatory reasons proffered by Wells Fargo for making the termination decision, i.e., that Plaintiff was investigated for and found to have violated Wells Fargo antiharassment policy for having pushed an employee. (See Am. Compl. ¶¶ 66, 68.)  These allegations undermine any inference that race was the but-for cause of his termination such that his Section 1981 claim should not be dismissed.

allege facts that: "[]he is a member of a protected group; (2) []he applied for the position in question; (3) []he was qualified for the position; and (4) the [employer] rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (citation omitted).

As with his claim of discriminatory termination, Robinson's claim fails because he does not include factual allegations sufficient to plausibly allege circumstances giving rise to an inference of discrimination or that he was not selected because of his race. First, Plaintiff generally asserts that the individuals who were selected for the positions to which he applied were of a different race than he is, but these broad allegations do not suffice to plausibly allege race discrimination, as "only speculation can fill the gaps" as to why those individuals were selected. See Tambedou v. Fundamental Clinical & Operational Servs., No. DKC 19-2822, 2020WL 5544199, at *4 (D. Md. Sep. 16, 2020) ("Simply asserting that a Caucasian candidate was selected for a role over an individual within a protected class, without any facts indicating discrimination, cannot support a claim of intentional discrimination."); McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin., 780 F.3d 582, 586 (4th Cir. 2015) (dismissing failure to promote claims where only allegation was that successful candidates were "predetermined" and were of a different race that plaintiff); see also Ali, 832 F. App'x at 171 (holding that the plaintiff's allegations that she was replaced by person not of her race and that the defendant treated other employees outside of her race more considerately when terminating them by giving them adequate time to collect their personal belongings did not state a claim for race discrimination under Section 1981.)

A close examination of allegations with respect to each of the positions discussed by Plaintiff also shows that Plaintiff fails to state a claim. Plaintiff mentions three District Manager opportunities in his Amended Complaint: the North Central DM position, the South Central DM position, and the Prince George's County DM position. (Am. Compl. ¶¶ 18–20, 37–38.)

11

Beginning with the North Central DM position, Plaintiff alleges that he did not get this job because it was "earmarked" for his supervisor, Ray Schreiner, who he identifies as "white Caucasian." (Am. Compl. ¶ 18, 24.)[4] The mere fact that the position was "earmarked" for Schreiner does not suggest any preference for Caucasian applicants over African American applicants, rather it shows a preference for *Schreiner* over other applicants, regardless of what their races might be. Nichols v. Comcast Cablevision, 84 F. Supp. 2d 642, 655 (D. Md. 2000) ("Favoritism, while unfair, is not violative of Title VII in the absence of improper discriminatory intent.") Without any other indication that Plaintiff was excluded from the promotion because he is African American, he fails to plead facts sufficient to create an inference of discrimination under either Title VII or Section 1981.

Turning to the South Central DM position, first and foremost, Plaintiff fails to state a claim of race discrimination regarding this vacancy because he never applied for it. (Am. Compl. ¶20.) Courts have routinely dismissed non-selection claims when the plaintiff admits that he never applied to the position in question, even where, like here, the plaintiff claims that he was discouraged from applying by his employer. See Battle v. Burwell, No. PWG-14-2250, 2016 WL 4993294, at *11(D. Md. 2016) (holding that even where a plaintiff alleges that he did not apply to a position because of discriminatory "shenanigans" by his employer, he cannot state a claim for failure to promote because such a claim would be premised on pure speculation); Roberts v. Office of the Sheriff for Charles Cnty., No. DKC 10-3359, 2012 WL 12762, at *5n.11 (D. Md. Jan. 3, 2012); see also Fields v. Aramark Facility Services, Inc., 240 F. Supp. 2d 453, 454 (D. Md.

---

[4] While Plaintiff generally asserts that he was more qualified than Schreiner (see Am. Compl. ¶ 22), this assertion is undercut by the fact that at the time of their applications, Schreiner was already a District Manager—Plaintiff's own supervisor, in fact—while Plaintiff was only a branch manager. (Am. Compl. ¶ 18–19.) Additionally, as discussed below, generalized assertions regarding qualifications are insufficient to create an inference of discrimination. McCleary-Evans v. Md. Dep't of Transp., No. CCB-13-990, 2013 WL 5937735, at *3 (D. Md. Nov. 5, 2013).

12

2003) ("[The plaintiff] has no claim for denial of a promotion because he never applied for a promotion.")

Furthermore, Plaintiff alleges that he did not apply to the South Central DM position because he was told that the position was already awarded to Margaret Griffith, a Caucasian. Again, at most, this indicates a preference for *Margaret Griffith* over all other applicants (which could have been of any race), not Caucasian applicants, over African American applicants. Moreover, by itself the fact that a Caucasian applicant is alleged to have been preselected for a position to which an African American applied is not enough to survive a motion to dismiss. Williams v. Carolina Healthcare System, Inc., 452 Fed. App'x 392, 4–5 (4th Cir. 2011) ("Although the promoted employee was preselected for the position, preselection does not, in itself, demonstrate racial discrimination.") Therefore, Plaintiff again fails to plausibly allege discrimination and retaliation with respect to the South Central DM position.

Finally, Plaintiff does not state a race discrimination claim with respect to his non-selection for the Prince George's DM Position. Again, the only fact that Plaintiff alleges to suggest that he was not selected for the Prince George's DM position because of his race is that all of the DMs were either white or Hispanic and that an unidentified "Hispanic female" was ultimately selected for the position. (Am. Compl. ¶ 58.) First, a "workplace's racial makeup does not create an inference that the purported conduct was motivated by race," and therefore, the fact that the other DMs in the Maryland area were either white or Hispanic does not create an inference of discrimination against African Americans. Nam v. 2012 Inc., No. DKC 15-1931, 2016 WL 107198, at *4 (D. Md. Jan. 11, 2016) (internal punctuation omitted). Additionally, Plaintiff makes no allegations regarding the selectee's qualifications, but rather rests his claim on his conclusory assertions that *he* was "eminently qualified." (Am. Compl. ¶ 58). This is simply insufficient to support a plausible inference of discrimination. See McCleary-Evans, 2013 WL 5937735, at *3

13

(granting the employer's motion to dismiss for failure to state a claim where the employee provided no information or allegations regarding the selected candidates' qualifications); Jackson v. Maryland, No. GJH-20-270, 2021 WL 915187, at *4 (D. Md. Mar. 10, 2021) (holding the plaintiff failed to allege she was qualified for the position where she only made generalized assertions regarding her superior qualifications); Grabenstein v. W. Md. Health Sys., No.-JFM-14-3563, 2016 WL 1389583, at *2 (D. Md. Apr. 7, 2016) (noting that "[a]n employer is free to choose among equally qualified candidates")

Furthermore, in his own Amended Complaint Plaintiff outlines the ample performance deficiencies cited by Wells Fargo in its explanation for why he was not promoted—specifically, that in September or October of 2018 there was an ERC case involving a bank teller in Plaintiff's branch, who complained that Plaintiff was often absent from the branch without advising the team, and separate evidence that Plaintiff had a history of inappropriately counseling people in public. (Am. Compl. ¶¶ 44–45.) Notably, Plaintiff admits that he was often absent from the branch and never denies that he failed to let his whole team know when he would be gone, instead responding that he let *one* employee know. (Am. Compl. ¶ 44.) And while Plaintiff again makes generalized and self-serving claims that the specific, fact-based reasons detailed in his complaint are "bogus," he does not specifically refute, and indeed, admits at least some of the reasons given by Wells Fargo for his non selection. These contradictory and conclusory statements of disagreement with the reasons given by Wells Fargo are simply not sufficient to create an inference of discrimination. See Conteh v. Diversified Prot. Corp., No. 20-cv-03032-LKG, at *11 (D. Md. Mar. 24, 2022) (Holding in the motion to dismiss context, "Plaintiff's own opinions about his job performance, without more, is[sic] insufficient").

Furthermore, a non-selection claim brought under Section 1981 is not plausible and is properly dismissed on a motion to dismiss when there is an "obvious alternative explanation"

14

alleged in the Amended Complaint.  <u>Tambedou v. Fundamental Clinical & Operational Servs.</u>, No. DKC 19-2822, 2020 WL 5544199, at *4 (D. Md. Sep. 16, 2020) (dismissing the plaintiff's Section 1981 claims for non-selection where "the complaint itself not only fails to allege facts supporting race discrimination but also supplies reasons for the actions that had nothing to do with discrimination," namely that the selectee was a better fit for the position.)  Because the Amended Complaint itself is devoid of factual allegations sufficient to suggest discrimination, and in fact, "supplies reasons for the actions that had nothing to do with discrimination," the Court should decline to read discriminatory animus into the Amended Complaint where it has not been sufficiently alleged, and instead should dismiss all of Plaintiff's Section 1981 and Title VII discriminatory non-selection claims in Counts I and III.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Defendant Wells Fargo Bank, N.A., requests that the Court dismiss in their entireties Counts I and III of Plaintiff Randall Robinson's Amended Complaint with prejudice and dismiss the failure to promote claims in Count II of Plaintiff Randall Robinson's Amended Complaint with prejudice.

Dated:  May 1, 2023                               Respectfully submitted,

                                                                  */s/ Sarah K. Biran*
                                                                  _____
                                                                  Sarah K. Biran (#29263)
                                                                  Fisher & Phillips LLP
                                                                  1401 New York Avenue, NW
                                                                  Suite 400
                                                                  Washington, DC 20005
                                                                  Tel. (202) 429-3708
                                                                  Fax (202) 978-3788
                                                                  Email:  sbiran@fisherphillips.com


                                                                  *Counsel for Defendant*
                                                                  *Wells Fargo Bank, N.A.*